## *In re* ESTATE OF H. T. DE SILVER, DECEASED.

A. was surety on a lease renewable from year to year, and having given six month's notice that he would not continue surety after the end of the current year. *Held*, that he having died in the meantime, his estate was not liable for any rent in arrear after that date.

**Appeal from the decree of the Orphans' Court of Philadelphia.**

Opinion delivered March 9th, 1874, by

AGNEW, C. J. This was a lease for one year, renewable from year to year, if the tenant held over and the landlord gave no notice to quit ; either party having power to determine it by one month's notice previous to the end of the year. The rent was payable monthly. In June, 1869, the trustees (as landlords) having written to De Silver, the surety for the tenant, about the rent, the latter replied, giving notice to collect the rent

from the tenant, and also that he would not continue surety after the end of the current year. Mrs. Anderson, the tenant, remained in possession and failed to pay the rent due on and after the first of August, 1870, and it is for this unpaid rent the trustees claim payment out of the estate of DeSilver, the surety, who died Sept. 10th, 1869.

Suretyship is a purely voluntary and gratuitous relation. In strict law the surety is bound equally with the principal, but the nature of his relation often brings equity to his relief when the principal cannot receive it. But a surety cannot discharge himself from his contract at will. This was decided in Coe *v.* Vogdes, 21 P. F. Smith, 383. His suretyship being a continuing contract, so long as his relation remains his contract continues. In that case no step was taken to prevent a renewal of the lease, and it was said, whatever might be the power of the sureties, as contended, to limit their future liability by notice against the renewal of the lease, the affidavit of defence sets forth no such notice, and no termination of the lease in fact. A mere notice that the sureties would not be liable is no defence to their covenant, for they could not dissolve the contract at pleasure.

In the present case if the surety had done nothing to prevent a renewal he could not escape his liability. But De Silver gave more than half a year's notice not to renew the lease after the expiration of the current year. Before the end of the year, and while it was still in the power of the trustees to demand other sureties from the tenant, or to give notice to her to quit, De Silver died, and his estate necessarily went into administration. Clearly after this explicit notice to collect the rent from the tenant, and not to renew the lease, and after the change in circumstances produced by the death of De Silver, it was inequitable in the trustees to continue the tenant for another year on the credit of the surety. Just the event happened which De Silver evidently had feared, Mrs. Anderson, the tenant, became unable to pay the rent. The trustees, as landlords, had no right in good conscience to continue the liability of the surety after his death, and when the law had taken charge of his estate for distribution among his own creditors and legal representatives. If they could do it for one year, they could do it so long as the tenant, though insolvent, might choose to remain, making the rent a charge on the estate of De Silver indefinitely, to the prejudice of creditors and others. The lien of the debt even upon the real estate might be perpetuated indefinitely by filing a copy of the lease and the covenant of De Silver in the prothonotary's office under the 24th section of the act of 24th February, 1834. Had the contract of lease been entire for a single term, including the year 1870, the surety would not be released. But the contract was severable at the will of either party, and the united wills of both were necessary to concur in its continuance.

It is this feature which enables equity to take hold of it, and prevent a renewal to the prejudice of the surety's estate, on the ground that the change in the circumstances of the parties demanded a termination of the relation of the surety, in justice and good conscience. Had De Silver suffered the lease to begin again for 1870, his estate would have been liable. But his notice and death were facts probing the conscience of the landlords, who could not in equity permit a renewal of the lease on the credit of the surety, when they had it in their power to compel the tenant to give a new surety or terminate the lease.

The decree of the orphans' court is affirmed with costs, and appeal dismissed.